IN THE UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF PENNSYLVANIA

| | |
|---|---|
| **UNITED STATES OF AMERICA** ) | |
| ) | |
| v. ) | **Criminal No. 04-233** |
| ) | **Electronically Filed** |
| **CLARENCE M. GREEN, JR** ) | |

**MEMORANDUM OPINION**

**July 28, 2005**

**Introduction**

On April 27, 2005, a federal grand jury in the Western District of Pennsylvania returned a six-count indictment against Defendant Clarence Green stemming from two separate arrests by City of Pittsburgh Police, the first on July 22, 2004 and the second on February 2, 2005. Count I of the indictment charges Defendant with possession with intent to distribute five (5) grams or more of cocaine base, a Schedule II controlled substance, in the form commonly known as "crack," on July 22, 2004, in violation of 21 U.S.C. §§841(a)(1) and 841(b)(1)(B)(iii). Count II charges Defendant with possession with intent to distribute less than 500 grams of cocaine, a Schedule II controlled substance on July 22, 2004, in violation of 21 U.S.C. §§841(a)(1) and 841(b)(1)(C). Count III charges Defendant Green with carrying a firearm during and in relation to the aforementioned drug trafficking crimes, and possessing said firearm in furtherance of those drug trafficking crimes, in violation of 18 U.S.C. §924(c)(1)(A)(1). Count IV charges Green with possessing a firearm after having been convicted of a crime punishable by imprisonment for a term of more than one year, on July 22, 2004, in violation of 18 U.S.C. §§922(g)(1), 924(a)(2), and 924(e).

Counts V and VI stem from the second incident on February 2, 2005. Count V charges Green with possession with intent to distribute less than 500 grams of cocaine, a Schedule II controlled substance, on February 2, 2005, in violation of 21 U.S.C. §§841(a)(1) and 841(b)(1)(C), and Count VI charges him with possession with intent to distribute less than 500 grams of cocaine base, a schedule II controlled substance, in the form commonly known as crack, on February 2, 2005, in violation of 21 U.S.C. §§841(a)(1) and 841(b)(1)(C).

Defendant filed a motion to suppress evidence seized on July 22, 2004 and February 2, 2005, namely crack cocaine, powder cocaine, a firearm and cash. Pursuant to said motion, a hearing was conducted on July 1, 2005, at which two witnesses testified on behalf of the Government. Defendant Green, represented by counsel at the hearing, presented no witnesses.

For the reasons set forth below, Defendant's motion to suppress will be denied.

**Findings of Fact**

Based on the evidence adduced at the suppression hearing through the testimony of Detective Norman Klahre and Special Agent Jeff Haggerty and this Court's credibility determinations, the Court makes the following findings of fact:

The facts are undisputed. In the early hours of July 22, 2004, City of Pittsburgh Police Detectives Brock Covington, Norman Klahre, Joseph Novakowski and Christopher Wydra were conducting a drug suppression detail in the Uptown section of the City of Pittsburgh. While the officers were traveling along Fifth Avenue in an unmarked vehicle, Detectives Covington and Klahre observed a black male[1] and a black female standing on the sidewalk facing each other. Detective Klahre noticed that the female had folded money in her right hand and was able to

---

[1] Later identified as Defendant Green, whom Detectives Klahre and Covington recognized and knew (from a prior arrest and conviction) to be a drug dealer and felon.

identify what appeared to him to be crack cocaine in the Defendant's left hand. Detective Klahre believed that he was witnessing a drug transaction about to take place.

The Detectives stopped their vehicle and, as they got out of the car, noticed the Defendant quickly moving towards Fricklin's Bar at 1507 Fifth Avenue. The Detectives pursued the Defendant into the bar, observing that he was in possession of a black .9mm semi-automatic pistol. Detective Novakowski then observed Defendant kneeling down and placing the gun on the floor in the kitchen area of the bar.

The Detectives then pulled the Defendant away from the gun. Detective Klahre picked up the gun, which was a .9mm Interarms Ultra Star, semi-automatic handgun, bearing the serial number 2126137. The officers knew the Defendant to be a convicted felon who was not permitted to carry a firearm.

Defendant was then handcuffed and placed under arrest. Incident to this arrest, Defendant was searched and a marijuana cigarette, a clear film container containing thirty six baggie corners of crack, $1,594 in cash, and two cell phones were recovered. The Defendant consented to the officers searching his vehicle, in which a baggie of marijuana was recovered.

During the course of booking Defendant into the jail, Officer Bock asked him if he had any other drugs on him, to which he replied in the affirmative. As a result, Officer Bock recovered a black film container containing 23 knotted baggie corners of suspected powder cocaine from the Defendant's underwear. This evidence was given to Detective Klahre.

On February 2, 2005, pursuant to a federal arrest warrant issued on August 5, 2004, members of the ATF Task Force, Pittsburgh Police, and Allegheny County Sheriff's Office arrested the Defendant at the Western Pennsylvania Hospital. The arrest warrant was based on a criminal complaint executed by Magistrate Judge Lisa Lenihan on August 5, 2004, and relied on

the evidence seized June 22, 2004. The Defendant had been a federal fugitive for approximately six months by the time of his arrest on February 2, 2005.

Defendant was searched incident to that arrest, revealing 13 baggie corners of crack and 10 baggie corners of power cocaine in two medicine containers found in the Defendant's underwear.

Defendant's proposed findings of fact and conclusions of law (Document No. 58) state his agreement with the government's recitation of the testimony of the witnesses in its findings of fact, and his agreement with the legal principles set forth in its conclusions of law, but argues that the testimony of the arresting officers is implausible and not credible. This argument is without merit.

While conceding to the facts as stated, Defendant contends that the Government's witnesses were not credible. He makes this assertion based on his conclusion that it is implausible both that Defendant would have still had drugs secreted in his crotch even after he was searched incident to the July 22, 2004 arrest and that he would have carried drugs on his person to an appointment with his cardiologist. The Court does not agree with this conclusion, however. Rather, the Detectives' testimony seemed to this Court to be truthful.

It is not implausible to assume that Defendant was not thoroughly searched following the first arrest, especially since he *was* handcuffed and the Detectives had no reason to conduct an inch-by-inch search at that time. Additionally, a visit to a cardiologist rarely requires full disrobement, and Defendant would have had little reason to be concerned that his visit would have revealed drugs in his underwear. While the Court does not here attempt to divine either Defendant's motivations for taking drugs to his cardiologist's office or why the Detectives may not have discovered all of Defendant's secreted drugs on July 22, 2004, neither occurrence is

beyond plausibility and thus does not affect the credibility of Detective Klahre and Special Agent Haggerty.

**Issues**

Defendant Green requests that the Court suppress all of the evidence seized on July 22, 2004, as it purportedly was obtained in violation of his Fourth Amendment right to be free from unreasonable searches and seizures. Defendant bases this claim on his allegation that the Detectives lacked a warrant, probable cause, exigent circumstances, or reasonable suspicion to arrest and/or stop and search the Defendant.

Defendant Green further requests that the Court suppress all of the evidence seized on February 2, 2005, as it allegedly stemmed entirely from the July 22, 2004, arrest and seizure and therefore is purportedly the "fruit of a poisonous tree."

The Government responds that the discovery and seizure of the evidence on July 22, 2004, was justified because the Detectives had both reasonable suspicion and probable cause to believe that Defendant was in the process of committing a drug transaction. Consequently, the arrest and seizure on February 2, 2005, was consequently constitutionally permissible.

**Discussion**

**Arrest on July 22, 2004**

A warrantless arrest by a law enforcement officer is reasonable under the Fourth Amendment where there is probable cause to believe that a criminal offense has been or is being committed. Devenpeck v. Alford, ___ U.S. ___, 125 S.Ct. 588, 593 (2004). Whether probable cause exists depends upon the reasonable conclusion to be drawn from the facts known to the arresting officer at the time of the arrest. Maryland v. Pringle, 540 U.S. 366, 371 (2003). In order to establish probable cause, the government "need not present the quantum of proof necessary to

convict." United States v. Torres-Maldonado, 14 F.3d 95, 105 (1st Cir.), cert. denied, 513 U.S. 870 (1994). All that is required is a "fair probability" that the officer's asserted belief [that a crime is occurring] is true. Illinois v. Gates, 462 U.S. 213, 235 (1983).

The Detectives had probable cause to believe Defendant Green was engaged in a drug trafficking activity for the reasons mentioned below. Therefore, the arrest of Defendant Green did not violate his Fourth Amendment rights against unreasonable searches and seizures.

The Detectives were aware that the area where Defendant Green was spotted was a high crime and high drug traffic area, notorious for open air drug sales (Tr. 5). The Detectives, recognized Defendant Green, and knew he was a convicted drug dealer and felon. Furthermore, the area was well-lit, and Detective Klahre could see Defendant's movements clearly. (Tr. 5, 6). Detective Klahre's position was roughly only ten feet from the alleged drug transaction. The Detectives viewed a woman with folded money in her hands facing Defendant Green, who they observed was holding crack cocaine. When the Detectives stopped their car near Defendant Green, he quickly departed from the scene, placing his left hand to his mouth and his right hand to his pants' waistband. All of these facts were uncontradicted at the Suppression Hearing and qualify as sufficient evidence to suggest a drug transaction was about to take place. Accordingly, the Detectives had probable cause to arrest Defendant for drug trafficking and/or drug possession.

Furthermore, as the Detectives pursued the Defendant, Detective Novakowski observed him kneel down and place a gun on the floor of kitchen in Ficklin's Bar. The Detective's knew Defendant Green to be a convicted felon not permitted to carry a firearm.

When an officer has made a lawful arrest of a defendant, the Fourth Amendment allows a search of the Defendant's person as a "search incident" to that arrest. Chimel v. California, 395

U.S. 752, 762-63 (1969). Accordingly, the search of Defendant's person incident to his July 22, 2004, arrest was constitutionally permissible.

Even if this evidence did not amount to probable cause to arrest Defendant Green, the Detectives clearly had reasonable suspicion allowing them to briefly stop Defendant Green and question him concerning the matter. Under Terry v. Ohio, 392 U.S. 1 (1968), an officer who observes unusual conduct which leads him to reasonably conclude, in light of his experience, that criminal activity may be afoot may briefly stop the suspicious person and make reasonable inquiries aimed at confirming or dispelling his suspicions. Minnesota v. Dickerson, 508 U.S. 366, 369 (1993).

The Court has held that an individual's presence in a "high crime area" is among the relevant factors to consider in a Terry analysis. See, e.g., Illinois v. Wardlow, 528 U.S. 119 (2000). In Wardlow, the Court held that, in the context of a Terry stop, evasive behavior is a pertinent factor in determining reasonable suspicion, and "headlong flight" is the "consummate act of evasion . . . certainly suggestive of [wrongdoing]." Id. at 125.

Hence, in addition to the aforementioned information known to the Detectives (indicating a crime was occurring), the Detectives were permitted to take into account the fact that it was a high drug trafficking area and the fact that the suspect fled upon seeing the police in their decision to make a Terry stop, and the Detectives undoubtedly had reasonable suspicion to briefly stop the Defendant.

When Green ran, the Detectives were permitted to follow him. In the process of doing so, Detective Klahre saw the firearm in question, which was in "plain-view." Under the "plain-view" doctrine, if police are lawfully in position from which they view an object and if its incriminating character is immediately apparent, they may seize it without a warrant. See Horton

v. California, 496 U.S. 128, 136-137 (1990). Therefore, the firearm was seized without violating any of the Defendant's constitutional rights and the Detective's undoubtedly were able to search Defendant as an incident to that arrest. All of the evidence seized on July 22, 2005, was constitutionally obtained.

### Arrest on February 2, 2005

The arrest of Defendant Green on February 2, 2005, at Western Pennsylvania Hospital was pursuant to an arrest warrant and Criminal Complaint issued August 5, 2004, executed by Magistrate Judge Lenihan. Plaintiff had been a fugitive for some six months.

Defendant now argues that this arrest was in violation of his Fourth Amendment rights against unreasonable searches and seizures because it was the "fruit of a poisonous tree," allegedly because it stemmed from the July 22, 2004, arrest (which Defendant claims to be unconstitutional). Defendant's argument fails for several reasons.

First, as just discussed, the July 22, 2004, arrest and seizure did not violate Defendant's Fourth Amendment rights, so the tree was not, in fact, "poisonous."

Second, Defendant does not offer any concrete reasons why the arrest warrant might have been invalid, and this Court knows of none. Where a magistrate judge has found probable cause to issue a warrant, that finding is entitled to "great deference" on appeal. Gates, 462 U.S. at 236. Again, Defendant has offered no evidence or even argument to suggest that probable cause to arrest Defendant was lacking, or that Magistrate Judge Lenihan's warrant was invalid or deficient for some other reason.

Assuming arguendo that the arrest warrant was invalid, the good faith exception to the exclusionary rule would apply to this case. Under that rule, evidence cannot be suppressed if the officer relied in "good faith" on the issuance of a warrant. United States v. Leon, 468 U.S. 897

(1987). The "test for whether the good faith exception applies is whether a reasonably well trained officer would have known that the search was illegal despite the magistrate's authorization." United States v. Hodge, 246 F.3d 301 (3d. Cir. 2001) (quoting United States v. Loy, 191 F.3d 360, 367 (3d. Cir. 1999). The existence of a warrant typically is sufficient to prove that an officer conducted a search in good faith, Hodge, 246 F.3d at 307-308, and the Defendant has not presented evidence compelling this Court to question that fact.

Therefore, the February 2, 2005, arrest and search was permissible and the evidence seized pursuant to said search was constitutionally obtained.

**Conclusion**

For the reasons set forth above, the evidence obtained from or near defendant's person on July 22, 2004, and February 2, 2005, was lawfully obtained and properly introduced against defendant at trial.  Accordingly, his motion to suppress this evidence will be denied.

s/ Arthur J. Schwab<br>
Arthur J. Schwab<br>
United States District Judge

cc:   All counsel of record as listed below

Scott Brady, Esquire
United States Attorney's Office
700 Grant Street, Suite 400
Pittsburgh, PA 15219

Stanton D. Levenson, Esquire
1715 Gulf Tower
Pittsburgh, PA 15219